**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**SABRIA F. WASHINGTON,**
a/k/a Sabrina F. Washington**,**

                     **Plaintiff,**                5:12-cv-39
                                                                 (GLS)

                        **v.**

**MICHAEL J. ASTRUE,**
Commissioner of Social
Security,
                     **Defendant.**
_____

**APPEARANCES:**                             **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Olinsky Law Group                    HOWARD D. OLINSKY, ESQ.
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     JOANNE JACKSON
United States Attorney             Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe
Chief Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiff Sabria F. Washington, also known as Sabrina F. Washington, challenges the Commissioner of Social Security's denial of her claim for Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (*See* Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Washington's arguments, the court affirms the Commissioner's decision.

### **II. Background**

On January 6, 2010, Washington filed an application for SSI under the Social Security Act ("the Act"), alleging disability since December 31, 2008. (*See* Tr.[1] at 103-06, 110.) After her application was denied, (*see id.* at 42-46), Washington requested a hearing before an Administrative Law Judge (ALJ), which was held on May 3, 2011, (*see id.* at 31-34, 48). Washington failed to appear at the hearing, however, and, on May 4, 2011, the ALJ issued a notice to show cause for failure to appear. (*See id.* at 31-34, 97-98.) Finding no good cause for Washington's failure to appear at

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (*See* Dkt. No. 9.)

2

the hearing, the ALJ issued a decision on the record exclusive of hearing testimony, which denied the requested benefits.  (*See id.* at 16-30.)  That unfavorable decision became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review.  (*See id.* at 5-10.)

Washington commenced the present action by filing her Complaint on January 10, 2012 wherein she sought review of the Commissioner's determination.  (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 8, 9.)  Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 11, 14.)

### III.  <u>Contentions</u>

Washington contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (*See* Dkt. No. 11 at 6-17.)  Specifically, Washington claims that: (1) the ALJ failed to properly develop the record; (2) the residual functional capacity (RFC) determination "is unsupported by substantial evidence and is the product of legal error"; (3) her credibility was improperly assessed; and (4) the step five determination "is unsupported by substantial evidence and is the product of

3

legal error." (*Id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is supported by substantial evidence.  (*See* Dkt. No. 14 at 4-16.)

### IV.  Facts

The court adopts the parties' undisputed factual recitations.  (*See id.* at 3; Dkt. No. 11 at 2-4.)

### V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process used by the Commissioner in evaluating whether a claimant is disabled under the Act, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-3 (N.D.N.Y. Mar. 19, 2008).

### VI.  Discussion

**A.  Duty to Develop the Record**

Washington argues first that the ALJ violated her duty to develop the record by failing to: (1) obtain function by function assessments from

---

[2] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical.

Syracuse Community Health Center (SCHC) and counselor David Lindstrom; and (2) order a consultative intelligence evaluation. (*See* Dkt. No. 11 at 6-10.) The Commissioner counters that the ALJ fulfilled her duty because, among other things, she made reasonable efforts to further develop the record with respect to SCHC and St. Joseph's Hospital Health Center (SJHHC), where Lindstrom apparently worked. (*See* Dkt. No. 14 at 5-10.) Moreover, the Commissioner argues that a consultative intelligence exam was not necessary because, in the absence of such an exam, the record was sufficient for the ALJ to render a determination about Washington's mental functional capacity. (*See id.* at 9-10.) The court agrees with the Commissioner.

While the ALJ has an affirmative obligation to develop the administrative record, her duty to do so is not without limit. *See Guile v. Barnhart*, No. 5:07-cv-259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make her determination based upon that evidence. *See* 20 C.F.R. § 416.920b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not

required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Moreover, the ALJ is afforded discretion in determining whether a consultative intelligence exam is warranted. *See* 20 C.F.R. § 416.919a. As with development of the record generally, "[a] consultative examination is unnecessary if the record contains sufficient information on which to base the decision." *Hall ex rel. M.M. v. Astrue*, No. 11-CV-6317T, 2012 WL 2120613, at *4 (W.D.N.Y. June 11, 2012).

Here, because the record was sufficiently robust for the ALJ to make a disability determination, she was not obligated to further develop the record by either: (1) requesting function by function assessments; or (2) ordering a consultative intelligence examination. *See Streeter v. Comm'r of Soc. Sec.*, No. 5:07-CV-858, 2011 WL 1576959, at *3 (N.D.N.Y. Apr. 26, 2011). In particular, the record contains the opinions of consultative examiners Kristen Barry and Roberto Rivera, each of whom assessed Washington's functional limitations. (*See* Tr. at 199-202, 224-28.) It is also noted that, once it became clear that Washington may have been treated at SJHHC, records were requested from that facility covering the time she claimed to receive psychiatric treatment. (*See id.* at 174, 199.) SJHHC apparently provided all of the records in its possession, but those records

6

failed to substantiate Washington's allegation of mental health treatment approximately one year prior to her consultative examination with Dr. Barry. (*See id.* at 175-77.)

As for the necessity of a consultative intelligence exam, Dr. Barry estimated Washington's intellectual functioning "to be in the borderline to low average range." (*Id.* at 201.) Dr. Barry went on to opine, however, that Washington can "follow and understand simple directions and instructions and . . . is able to maintain . . . attention and concentration fairly well." (*Id.*) It was further noted by Dr. Barry that Washington had obtained a general education development diploma despite only completing eleventh grade. (*See id.*) A medical consultant also opined that an IQ test was unnecessary based upon Dr. Barry's opinion and because a mental RFC assessment and psychiatric review technique, both of which considered Washington's mental limitations, had been performed. (*See id.* at 221-23; *see also id.* at 203-16, 217-20.) For the foregoing reasons, highlighted by the sufficiency of the record and the lack of any obvious gaps, the ALJ did not violate her duty to develop the record. *See Brown v. Astrue*, No. 11-CV-6392T, 2012 WL 2953213, at *7 (W.D.N.Y. July 19, 2012).

**B.     RFC Determination**

7

Next, Washington claims that the RFC determination is infirm because the ALJ: (1) failed to incorporate one of the limitations noted by Dr. Barry despite giving her opinion "significant weight"; (2) similarly erred with respect to the opinion of state agency medical consultant V. Reddy, which was given "some weight"; and (3) improperly gave "significant weight" to the opinion of consultative examiner Dr. Rivera, which was incomplete and based upon an incomplete medical record. (Dkt. No. 11 at 10-13.) In contrast, the Commissioner responds that the RFC finding is supported by substantial evidence and was arrived at by properly applying the relevant legal principles. (*See* Dkt. No. 14 at 10-13.) The court again agrees with the Commissioner.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence[3] in the record. *See Frye ex rel. A.O. v. Astrue*, No. 11-1585-cv, 2012 WL

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

2125910, at *2 (2d. Cir. June 13, 2012). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ gave "significant weight" to the opinions of Drs. Barry and Rivera, and gave "some weight" to Dr. Reddy's opinion. (Tr. at 24.) Taking up first Washington's contention that the ALJ did not include a limitation for stress found by Dr. Barry, (*see* Dkt. No. 11 at 10-11), after specifically referencing Dr. Barry's assertion that Washington "has had some difficulty handling stressors," the ALJ recited Dr. Barry's ultimate opinion regarding Washington's limitations as set forth above. (Tr. at 24); *see supra* Part V.A. While the ALJ could have better explained her analysis of Dr. Barry's comment about Washington's ability to handle stressors, the court is satisfied that the RFC is nonetheless supported by substantial evidence. Specifically, the mention of stressors in the psychiatric evaluation appears to have no relation to Washington's ability to handle stress in the workplace. (*See id.* at 201); 20 C.F.R. § 416.945(c). More importantly, Dr. Barry indicated that Washington could meet the demands of unskilled work despite only "*some* difficulty handling stressors." (Tr. at 201 (emphasis added)); *see* SSR 85-15, 1985 WL 56857, at *4

9

(1985).

Turning to Dr. Reddy, the court is similarly unpersuaded that the ALJ erred. Washington claims that Dr. Reddy's finding of moderate limitation

> "in maintaining regular attendance, being punctual within customary tolerances, the ability to travel in unfamiliar places or use public transportation, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"

were omitted from the RFC determination. (Dkt. 11 at 11; *see* Tr. at 217-18.) As with Dr. Barry, Dr. Reddy made positive findings regarding Washington's ability to perform the basic mental demands of unskilled work despite any moderate limitations flowing from her mental impairments. (*See* Tr. at 217-18, 221.)

Lastly, Dr. Rivera's opinion was properly weighed. Washington's argument that Dr. Rivera failed to render a complete opinion by omitting any mention of her ability to handle objects, hear, speak, and travel is absurd. (*See* Dkt. No. 11 at 12.) The regulation she relies on alludes to the consideration of certain activities by consultative examiners "such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and travel." 20 C.F.R. § 416.919n(c)(6). However, it is readily

10

apparent from Dr. Rivera's report that Washington had no physical deficits in her ability to use her hands, hear, speak, and travel. (*See* Tr. at 224-28.) Indeed, she never alleged any such limitations. Moreover, Washington's claim that Dr. Rivera's "incomplete opinion" was based upon an incomplete record, (Dkt. No. 11 at 12-13), is similarly without merit. Dr. Rivera pointed out that several of Washington's claims regarding physical ailments—namely, a hole in her heart, heart murmur, and seizure disorder—were "very questionable," and noted that she should provide documentation of those maladies because "the entire presentation [wa]s quite inconsistent." (Tr. at 224-25, 227.) Because the record was sufficiently developed and no records apparently exist to corroborate Washington's accusation of physical limitations, suggesting fabrication on her part, the ALJ properly afforded Dr. Rivera's opinion that Washington had "no limitations to sitting, standing, walking, lifting, carrying, pushing, or pulling" significant weight. (*Id.* at 227.) Ultimately, the RFC is supported by substantial evidence and will not be disturbed.

## C.     **Credibility Determination**

Washington asserts that the ALJ erred in assessing her credibility. (*See* Dkt. No. 11 at 13-15.) Specifically, Washington claims that the ALJ

failed to adhere to the two-step process outlined in 20 C.F.R. § 416.929(c) and overlooked her subjective statements, which demonstrated limitations in her daily activities. (*See id.*) The court disagrees.

As referenced above, the ALJ must consider a claimant's subjective complaints of limitations resulting from her impairments, including those from pain, in gauging her RFC. *See* 20 C.F.R. § 416.945(a)(3). However, an individual's statement as to pain or other symptoms is not alone conclusive evidence of disability. *See id.* The Commissioner is obligated to evaluate all of a claimant's symptoms, "including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence." 20 C.F.R. § 416.929(a).

Ultimately, "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 61 Fed. Reg. 34,483, 34,485-86 (July 2, 1996). Thus, "after weighing the objective medical evidence in the record, . . . and other indicia of credibility," an ALJ may reject the claimant's subjective allegations regarding limitation as long as she sets forth her "reasons with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Lewis v. Apfel*, 62 F. Supp. 2d 648,

12

651 (N.D.N.Y. 1999) (internal quotation marks and citation omitted).

Here, the ALJ found that Washington's "subjective complaints are not fully credible," but that "she is limited . . . by her psychiatric symptoms." (Tr. at 26.) This determination is not tainted by legal error and is supported by substantial evidence. First, because she failed to appear at the hearing, Washington's only allegations stem from a function report she completed. (*See id.* at 33-34, 124-33.) In any event, the ALJ properly considered the relevant factors outlined in 20 C.F.R. § 416.929(c)(3) in refusing to fully credit Washington's allegations. (*See* Tr. at 24-26.) The record is devoid of medical evidence to substantiate Washington's claims about a seizure disorder or heart condition. And, as the ALJ properly found, Washington's own statements suggest that she maintains a good ability to perform activities of daily living despite her claimed limitations in some of those activities. (*See id.* at 129.)[4]

D. **Step Five Determination**

Lastly, Washington argues that the ALJ's step five determination is

---

[4] It is also noted that the ALJ was obviously aware of, and clearly did not disregard, Washington's allegation that her ability to play sports has deteriorated because of shortness or breath and weakness. (*See* Tr. at 24.)

13

flawed because she failed to introduce testimony from a vocational expert (VE) on the issue of whether Washington can make an adjustment to other work. (*See* Dkt. No. 11 at 15-17.) More specifically, Washington asserts that her "significant mental limitations" precluded reliance on the Medical-Vocational Guidelines alone, and that her failure to appear at the hearing before the ALJ has no bearing on the necessity of such testimony. (*Id.* at 16-17.) This argument is also unavailing.

Where the claimant suffers solely from a nonexertional impairment, the ALJ must consider: (1) the RFC reflecting such nonexertional impairment and its limiting effects on the availability of other work; and (2) the claimant's age, education, and work experience. *See* SSR 85-15, 1985 WL 56857, at *2-3 (1985). Those medical and vocational factors must be analyzed under the framework set out in the Medical-Vocational Guidelines § 204.00. *See id.* Although "[t]he assistance of a vocational resource may be helpful" and, in some cases, necessary, SSR 85-15 does not require that the ALJ always call upon the services of a VE. *Id.* at 3. The ultimate inquiry in a case such as this one is whether the claimant can perform unskilled work. *See id.* at *4. Unskilled work requires "the abilities (on a sustained basis) to understand, carry out, and remember simple

14

instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id.*

Here, the ALJ properly found that Washington "retains the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; respond appropriately to supervision, co[-]workers, and usual work situations; and deal with changes in a routine work setting." (Tr. at 24; *see id.* 201, 217-18.) The ALJ also recited the appropriate legal principles and made a finding, which is amply supported, that Washington's nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels." (*Id.* at 27.) That finding obviated the need to consult with a VE. *See generally* SSR 85-15, 1985 WL 56857, at *3.

### E.  Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Washington's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

December 5, 2012
Albany, New York